IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTHONY COOKS | § | |
|     TDCJ NO. 1109101 | § | |
| | § | |
| v. | § | C.A. NO. C-10-332 |
| | § | |
| OSCAR BARRON, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Anthony Cooks is suing certain prison officers for the use of excessive physical force and for failure to protect him against such application of force, thereby violating his Eighth Amendment rights. Defendants move for summary judgment to deny plaintiff's claims on the grounds that he has failed to exhaust his claims, the Eleventh Amendment bars claims against defendants in their official capacity, and defendants are entitled to qualified immunity. (D.E. 55). Plaintiff has filed a response to defendants' summary judgment motion. (D.E. 61).

For the reasons discussed herein, it is respectfully recommended that the Court grant summary judgment as to plaintiff's claims against Officers Pulido, Espinoza, and Villareal for failure to exhaust his administrative remedies against them, that Officer Barron's motion for summary judgment be granted as to the excessive force claim against him in his official capacity, and that plaintiff's request for injunctive relief be denied. Finally, it is recommended that summary judgment be denied as to the excessive force claim against Officer Barron in his individual capacity, and that this claim proceed to trial along with a claim for violation of bodily integrity.

**I.     Jurisdiction.**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**II.    Procedural background.**

At the time the complaint was filed, plaintiff was an inmate in the Texas Department of Criminal Justice ("TDCJ"), and was incarcerated at the McConnell unit in Beeville, Texas. (D.E. 1, at 1). He commenced this lawsuit on October 18, 2010, complaining that he was physically and sexually assaulted by Officer Oscar Barron. (D.E. 1, at 4). Specifically, he alleges that Officer Barron twisted plaintiff's arms through his cell's tray slot and forced the plaintiff's face to make contact with Officer Barron's penis. (D.E. 55-3, at 3). He further claims that Officers Nick Espinoza and Veronica Villareal witnessed the incident, but did not intervene. (D.E. 1, at 4; D.E. 55-3, at 3). In addition, he claims that Espinoza and Villarreal falsely denied that the event took place, thereby thwarting the investigation of his claims. Id. Plaintiff also claims that Officer Luis Pulido, who was tasked with the initial investigation, simply sided with his fellow officers and failed to conduct a sufficiently rigorous inquiry. (D.E. 1).

Service was ordered on defendants, and on January 18, 2011, defendants filed their Answer and raised the affirmative defenses of failure to exhaust, Eleventh Amendment sovereign immunity, and qualified immunity. (D.E. 18).

On May 5, 2011, defendants filed the instant motion for summary judgment. (D.E. 55). On May 24, 2011, plaintiff filed his response in opposition. (D.E. 61). As of June 30, 2011, plaintiff is no longer in TDCJ custody. (D.E. 72).

Plaintiff seeks monetary damages and a court order prohibiting Officer Barron from working in the TDCJ. (D.E. 1).

## III. Summary judgment evidence.

In support of their motion for summary judgment, defendants offer the following evidence:

> Ex. A:   TDCJ Office of the Inspector General affidavit of no record from the period of January 1, 2009 to December 31, 2009:
>
> Ex. B:   Relevant portions of plaintiff's classification and disciplinary records from the period of January 1, 2009 to December 31, 2009; and
>
> Ex. C:   Relevant portions of plaintiff's grievance record from the period of January 1, 2009 to December 31, 2009.

Plaintiff references defendants' exhibits in his summary judgment response. The summary judgment evidence establishes the following:

On April 10, 2009, plaintiff submitted an inter-office communication regarding a physical assault by Officer Barron that allegedly occurred on April 7, 2009. (D.E. 55-3, at 12-13). Plaintiff stated that he was receiving a hypocaloric sandwich at the E-Pod when an intoxicated Officer Barron struck his hand, kicked on his cell door's locking device, as well as threatened to "kick [his] ass." Id. at 12. He also claimed that other officers witnessed the event. Id. Officer Pulido investigated plaintiff's complaint, but did not note any sexual assault allegation that occurred on April 7. Id. at 7-8. After interviewing various officers who were in charge of E-Pod, monitored access to E-Pod, or were assigned to F-Pod with

3

Officer Barron on the date of the alleged assault, Officer Pulido concluded that plaintiff's allegations were unsubstantiated. Id.

On April 20, 2009, plaintiff submitted a Step 1 grievance alleging that Officer Barron physically and sexually assaulted him on April 8, 2009 and included an account of the investigative measures taken. Id. at 3. Aside from these additions, the grievance alleged the same basic facts as those contained in the earlier inter-office communication. On May 27, 2009, this grievance was denied. Id. at 4. Plaintiff's Step 2 grievance was similarly denied on June 24, 2009. Id. at 18.

## IV.     Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

4

affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

**V.     Defendants' summary judgment motion.**

    **A.     Failure to Exhaust Administrative remedies.**

Defendants Pulido, Espinoza, and Villareal move for summary judgment arguing that plaintiff failed to exhaust the prison administrative remedies as required by 42 U.S.C. § 1997e because he failed to file a Step 1 and Step 2 grievance against them alleging failure to protect.

    The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 83 (2006). Because

exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. Jones v. Bock, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). The Fifth Circuit requires that both steps be completed in order to file suit in federal court. Johnson v. Johnson, 385 F.3d 503, 515-16 (5th Cir. 2004).[1]

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance to exhaust administrative remedies, and noted:

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials "time and opportunity to address complaints internally." Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit. Further, as a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining. If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know – and a prisoner could ordinarily be expected to provide – details regarding who was involved and when the incident occurred, or

---

[1] Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the issue he is complaining about. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has ten days to appeal by filing a Step 2 grievance. Wendell, 162 F.3d at 891. Once the two-step process has been completed, the offender's administrative remedies within the TDCJ have been exhausted. See http://www.tdcj.us/publications/admin-rvw/Offender%20Grievance%20pamphlet%202007.pdf. Thereafter, an inmate dissatisfied with the disposition of his Step 2 grievance may file suit in district court. See 42 U.S.C. § 1997e(a).

> at least other available information about the incident that would permit an investigation of the matter. In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that prices in the commissary are too high, could adequately alert administrators to the problem whether the grievance names anyone.

Id. at 517 (citations omitted).

In his Step 1 grievance, plaintiff clearly identified Officer Barron and charged him with using excessive force. (D.E. 55-3, at 3-4). However, plaintiff did not allege that any other officer on duty that day was aware of a serious risk to his health and safety and ignored that risk. Id. Moreover, it appears that he failed to even name Officers Espinoza and Villareal in his Step 1 grievance. Although plaintiff noted that Officer Pulido handled the investigation, he did not allege that it was conducted improperly. Id. at 4. As a result, he has not exhausted his claims against Officers Pulido, Espinoza, and Villareal.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the PLRA. Wilson, 151 F.3d at 295. For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. Id.; see also Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir.1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. Id. And see Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982). In this case, there is no evidence that prison officials ignored or prevented plaintiff from pursuing his administrative remedies. To the contrary, plaintiff properly grieved his

claims against Officer Barron. While plaintiff's response to the summary judgment motion accuses the TDCJ of concocting "bogus document[s]," he does not support this assertion with any evidence. (D.E. 61, at 8). There are no grounds to excuse exhaustion.

The summary judgment evidence establishes that plaintiff failed to exhaust his administrative remedies as to his failure to protect claims against Officers Pulido, Espinoza, and Villareal. Thus, it is respectfully recommended that the Court grant defendants' motion for summary judgment to dismiss plaintiff's failure to protect claims against Officers Pulido, Espinoza, and Villareal for failure to exhaust administrative remedies, and that these claims be dismissed.

### B. Eleventh Amendment immunity.

The remaining defendant, Officer Barron, moves for summary judgment to dismiss plaintiff's claims against him in his official capacity as barred by the Eleventh Amendment.

For purposes of § 1983 liability, a claim against a public official in his or her official capacity is in effect a suit against the state or local government he represents. Mairena v. Foti, 816 F.2d 1061, 1064 (5th Cir. 1987). Thus here, plaintiff's claim against Officer Barron in his official capacity is a claim against the State of Texas.

The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998); Farias v. Bexar County Bd. of Trustees for MHMR Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991). Section 1983 does not waive the state's sovereign immunity, see Quern v. Jordan, 440 U.S. 332, 338 n. 7 (1979), and Texas has not consented to this suit. See Emory v. Texas

9

State Bd. of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984). Accordingly, plaintiff's claim of excessive force against Officer Barron in his official capacity is barred by the Eleventh Amendment.

Plaintiff's request for a court order prohibiting Officer Barron from working in the TDCJ is treated as a request for injunctive relief. The Eleventh Amendment does not bar a suit against an official seeking injunctive relief. Meza v. Livingston, 607 F.3d 392, 412 (5th Cir. 2010) (citing Ex Parte Young, 209 U.S. 123 (1908)). Nevertheless, plaintiff neglected to sue Rick Thaler, who has authority over personnel decisions in his capacity as the director of the TDCJ. Additionally, plaintiff has been released from TDCJ custody, thereby rendering his personal claims for equitable or declaratory relief moot. See Gillespie v. Crawford, 858 F.2d 1101, 1103 (5th Cir. 1988) (per curiam) (claim for injunctive relief from unconstitutional prison conditions mooted by plaintiff's parole). To the extent that plaintiff seeks injunctive relief on behalf of other TDCJ inmates without pursuing class certification, he lacks standing to vindicate their rights. See Barrows v. Jackson, 346 U.S. 249, 255 (1953) (stating the general rule that "one may not claim standing ... to vindicate the constitutional rights of some third party"); cf. Sosna v. Iowa, 419 U.S. 393 (1975) (allowing a class action of prisoners to proceed even though the named plaintiff's claim had become moot). It is therefore respectfully recommended that Officer Barron's motion for summary judgment be granted in his favor on the excessive force claim against him in his official capacity, and it is further recommended that plaintiff's request for injunctive relief be denied.

## C. Qualified immunity.

As the remaining defendant, Officer Barron argues that he is entitled to summary judgment in his favor on plaintiff's claims against him in his individual capacities based on qualified immunity. Officer Barron maintains that plaintiff fails to establish a constitutional violation and, even if he could demonstrate that Officer Barron violated his clearly established constitutional rights, he cannot show that those actions were objectively unreasonable under the facts of this case.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." Atteberry v .Nocana Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005). First he must claim that the defendants committed a constitutional violation under current law. Id. (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the

11

constitutional right was clearly established, that ordering of the analytical steps is not mandatory. Pearson, 555 U.S. 223, at 236 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

    **1.    Excessive Force**

To prevail on an Eighth Amendment excessive force claim, the central question that must be resolved is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citation omitted). In determining whether an Eighth Amendment excessive force claim has been demonstrated, the courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered. Hudson, 503 U.S. at 7.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. Hope v. Pelzer, 536 U.S. 730, 740 (2002). Even officers who interpret the law mistakenly but reasonably are entitled to immunity. See Anderson, 483 U.S. at 641.

Defendant Barron argues that there is no need to even reach the question of whether there was a constitutional violation because the alleged physical and sexual assault did not in fact occur. (D.E.551, at 9). In support of this assertion, he refers to plaintiff's documented accusations regarding the separate attacks on April 7 and April 8. In particular, he notes the omission of any suggestion of sexual assault in plaintiff's April 10th inter-office communication regarding the April 7th attack, even though the sexual assault allegedly occurred on April 8th. It appears that the Step 1 grievance filed on April 20th was the first time plaintiff complained of the sexual assault by Officer Barron. It also appears that the complaint omits any mention of the attack on April 7th. Defendant contends that no reasonable jury could find (1) that plaintiff was assaulted on consecutive days, but neglected to mention the April 8 sexual assault in his April 10th inter-office communication; (2) that plaintiff would fail to include the April 7th assault in this lawsuit; or (3) that plaintiff would wait nearly two weeks until April 20th to report his April 8th sexual assault, even though he quickly reported the April 7th physical assault on April 10th. (D.E. 55, at 9-10).

In response, plaintiff counters that he has met his evidentiary burden as to the assault. (D.E. 61, at 10). He claims that photos of the injuries were taken after the assault by Officer Ramirez, though he speculates that they may have since been destroyed. Id. at 9. He also identified nurse Randall Donna, whom he claims inspected his injuries on April 10th. (D.E. 55-3, at 12; D.E. 61, at 9). He states that he waited until April 10th to report the assault because his injuries were so severe, but he does not address why he neglected to mention the

sexual assault that allegedly occurred on April 8th until his April 20th Step 1 grievance. Id. at 9-10.

After reviewing the record and drawing all inferences in favor of the non-moving party, Caboni., 278 F.3d at 451, it appears that genuine issues of material fact remain. Defendant's underlying premise that plaintiff's inter-office communication and the Step 1 grievance charge him with committing two separate instances of assault is undermined by the substantial possibility that both documents refer to one single assault that occurred on April 7th. Due to the time gap between the alleged incident, the inter-office communication, and the Step 1 grievance, plaintiff could have been mistaken about when the incident occurred. This would explain away the implausible scenario that defendant was involved in attacks on consecutive days.

Defendant's argument regarding plaintiff's failure to include the sexual assault in the inter-office communication also calls for a judicial assessment of plaintiff's credibility. Such a factual determination is more properly regarded as the province of the jury, and it therefore falls outside the scope of a summary judgment analysis. Moreover, the lack of any supporting evidence presented by defendant, such as affidavits establishing that he was not at the E-Pod during the alleged attack, fails to create a scenario in which the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. In addition, plaintiff has identified at least two people, Officer Ramirez and nurse Randall Donna, who can validate his claims of injuries sustained during a physical assault. Given that the dispute continues to revolve around contested issues of material fact, defendant has

14

failed to demonstrate why summary judgment should be granted. Celotex Corp, 477 U.S. at 323.

By not addressing the substantive applicability of qualified immunity on plaintiff's excessive force claim, defendant seems to concede that it does not apply. Pursuant to the Hudson factors, the alleged physical and sexual assault of an inmate who was confined within his cell and waiting for food states a claim for a violation of the Eighth Amendment right to be free of cruel and unusual punishment. 503 U.S. 1, 7 (1992). The alleged assaults would also be objectively unreasonable in light of that clearly established right. Accordingly, it is respectfully recommended that the Court deny the motion for summary judgment by defendant Barron based on qualified immunity.

### 2. Bodily Integrity Claim

In his original complaint, plaintiff alleged that Officer Barron "... attempted to place his penis dick inside my mouth but I turned my mouth and he made contact on the side of my face." (D.E. 1 at 4). Following the evidentiary hearing, the alleged assault was characterized as an incident of excessive force, and service ordered on Officer Barron. Plaintiff did not object to the characterization of the alleged sexual assault as excessive force in violation of the Eighth Amendment, and defendants' have defended this behavior via an Eighth Amendment analysis. To the extent plaintiff may have been attempting to raise a substantive due process claim that Officer Barron violated his right to bodily integrity, for the reasons stated below, that claim is properly considered within the Eighth Amendment analysis, and does not constitute an independent ground for relief.

The Due Process Clause of the Fourteenth Amendment confers upon an individual the right to be free of state-occasioned damage to her bodily integrity...." Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997). As a general rule, a State's failure to protect an individual from private violence does not state a due process clause violation; however, an exception exists if there is a "special relationship" between the State and the individual. DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S.189, 197 (1989). That is, the State may have a constitutional duty to protect an individual from private violence if through "incarceration, institutionalization, or similar restraint of personal liberty," the individual's freedom to act on his or her own behalf has been limited. DeShaney, 489 U.S. at 200. In Randolph, the Fifth Circuit found the State owed no duty to a mentally ill individual who injured herself while voluntarily attending out-treatment services. Randolph, 130 F.3d at 730. And in Walton v. Alexander, 44 F.3d 1297 (1995), the Fifth Circuit found that the State owed no duty to protect a voluntary resident of a school for the deaf from sexual assault. However, in Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450-52 (5th Cir.), cert. denied, 513 U.S. 815 (1994), the Fifth Circuit found that the State in fact did have a special duty to protect school children from State employees, and rejected the defendant's argument that no special relationship existed because the children attended school voluntarily. Thus, it appears that the Fifth Circuit examines the specific relationship on a case by case basis to determine if a substantive due process claim is viable.

It is well established that the Eighth Amendment, not the Fourteenth Amendment, "serves as the primary source of substantive protection to convicted prisoners." Austin v.

16

Johnson, 328 F.3d 201, 210 n. 10 (5th Cir. 2003) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986). When, as here, both the Eighth Amendment and the due process clause of the Fourteenth Amendment serve to protect the same constitutional right, *then the claim must be brought under the more specific source of protection* rather than as a generalized substantive due process claim. Austin, 328 F.3d at 210 (citing Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis added)). Accord Calhoun v. Hargrove, 312 F.3d 730, 735 (5th Cir. 2002) (finding that Fourteenth Amendment claim for inadequate medical care was "really a restatement of [an] Eighth Amendment claim [and] must be analyzed under the standard appropriate to that specific provision."). As such, prisoner claims challenging the use of restraints, leg irons, and other bodily restrictions are evaluated under the Eighth Amendment's excessive force standard to determine whether the force is applied in a good faith effort to maintain or restore discipline, or whether it is applied maliciously and sadistically for the very purpose of causing harm. See Valencia v. Wiggins, 91 F.2d 1440, 1446 (5th Cir. 1993); see also Fuentes v. Wagner, 206 F.3d 335, 347-48 (3d Cir. 2000) ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting.") Similarly, prisoner claims challenging the conditions of confinement as unsanitary or unsafe are considered under the Eighth Amendment's deliberate indifference standard, not the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-537 (1979) (distinguishing between claims of pretrial detainees and claims of convicted prisoners, and noting that, once the State has secured a formal adjudication of guilt, the Fourteenth

Amendment is no longer applicable). Finally, claims of sexual assault by prisoners are evaluated under the Eighth Amendment's failure to protect standards. See Farmer v. Brennan, 511 U.S. 825 (1994).

In this case, plaintiff's right to be free from sexual assault is specifically included within the Eighth Amendment's protections against excessive force, as is his right to be protected from a known risk to his health and safety. As such, plaintiff's claim of sexual assault against Officer Barron is properly raised under the Eighth Amendment, not the Fourteenth. Austin, 328 F.3d at, 210 n. 10.

It is recommended that the District Court characterize plaintiff's claim as a claim under the Eighth Amendment for excessive force and for violation of his bodily integrity. Plaintiff, who is not a lawyer, should not be faulted for the failure to characterize his claim as such. The facts were clearly stated in his complaint. If defendant Barron believes it appropriate to file an additional motion for summary judgment on this basis, he should be allowed to do so.

## VI. Recommendation

For the reasons stated above, it is respectfully recommended that defendants' motion for summary judgment be granted in part and denied in part. (D.E. 55). It is recommended that summary judgment be granted in favor of Officers Pulido, Espinoza, and Villareal on the grounds that plaintiff failed to exhaust his administrative remedies against them. It is further recommended that the Court grant summary judgment in favor of Officer Barron as to the excess force claim against him in his official capacity and that the court deny

plaintiff's request for injunctive relief. It is further recommended that the Court deny the motion for summary judgment as to the excessive force claim against Officer Barron in his individual capacity because material issues of fact remain.

Finally, it is recommended that the District Court recognize that plaintiff has also brought an Eighth Amendment claim for violation of bodily integrity, and that if requested, defendant Barron be given the opportunity to file a motion for summary judgment on this unaddressed claim.

Respectfully submitted this 7th day of October, 2011.

 _____
 B. JANICE ELLINGTON
 UNITED STATES MAGISTRATE JUDGE

]

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).